## Deltah Electric Corporation *v.* Lawson Manufacturing Company, Appellant, et al.

Argued April 27, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Saul Chersky,* for appellant.

*Albert C. Hirsch,* with him *George W. McClure* and *Watson & Freeman,* for appellee.

OPINION BY RHODES, J., September 28, 1938:

Deltah Electric Corporation brought an action in assumpsit against the Lawson Manufacturing Company. Lawson issued a writ of scire facias bringing in Pennwood Clock Corporation as a party defendant.

Pennwood, in its affidavit of defense, admitted its liability for the entire indebtedness except as to the sum of $688.85, for which it claimed a credit for defective merchandise returned to plaintiff. At the time of trial this amount was reduced to $500 by agreement of the parties. Plaintiff based its claim against Lawson on an alleged contract for 5,000 special clock movements. Lawson denied that there was such a contract, and averred that Pennwood only was liable to plaintiff. The jury found against both defendants in the amount of $2,181.28. Lawson moved for a new trial and for judgment n. o. v. Both motions were overruled, and judgment was entered on the verdict, from which Lawson has appealed.

Correspondence between plaintiff and both defendants contained the material facts.

On July 26, 1932, Lawson ordered from plaintiff 15 clock mechanisms. At that time Lawson was engaged in manufacturing gas and water meters, and Pennwood in manufacturing clocks. Pennwood leased from Lawson the second floor of the building occupied by Lawson.

On August 17, 1932, Frederick A. Greenawalt, president of Pennwood, appeared at the New York office of plaintiff, and executed an order in the name of Lawson for 5,000 clock movements of a special type. The day following, plaintiff addressed a letter to Lawson referring to the order for 5,000 movements, at $1.06 each, and requested an advance of 20 per cent of the total cost of that quantity of merchandise, together with Lawson's formal confirmation. Lawson did not confirm this order, but asked for quotation on a lot of 500. On August 22d, plaintiff quoted Lawson on a 500 lot, and stated that there would be in addition to the unit price a special tool charge of $75. A similar request for advance payment of 20 per cent of the order was contained in this letter. By telegram and by letter of August 23d, Lawson accepted the proposal for 500 mechanisms, and en-

closed a check for 20 per cent of $680, the cost of the 500 sets at $1.36 a set.

Various shipments of the merchandise as manufactured were made to Lawson during August and September of 1932, and a check of Lawson was sent to plaintiff in the amount of $448.83, on October 6, 1932, in payment of two invoices for merchandise shipped under the order, besides an invoice for the 15 clock mechanisms ordered in July. On November 16, 1932, Pennwood sent plaintiff Lawson's check in the amount of $381. This represented the last payment on Lawson's 500 order, together with 37 extra movements which appeared to have been manufactured and shipped to Lawson over the agreed quantity. The check also included $75 for the special tool charge referred to in plaintiff's letter of August 22d.

In addition other small shipments were made to Lawson between October 29th and November 15th. It does not appear by whom they were ordered. For such the jury could have found that Lawson was liable, as the goods were billed and shipped to Lawson, and apparently received by Lawson without protest.

On October 31, 1932, Pennwood forwarded to plaintiff an order for 750 movements, with a letter in which it was stated that the existing arrangement between Pennwood and Lawson had been changed; that in the future all orders would be placed by Pennwood and paid for by them. Plaintiff accepted this order by letter of November 2d, but requested from Pennwood a letter from Lawson guaranteeing the Pennwood account. In this same letter plaintiff sought an order for 5,000 movements from Pennwood on the ground that such an order would simplify matters, and further stated:

"In regard to reducing the price, we must again point out that, while it is true you are giving us nice business, nevertheless the difference between ordering five thousand and ordering at the rate of five hundred or

even seven hundred and fifty at a time simply means that we have to figure on less screw machine parts and metal and we cannot effect any economy on these parts. Also, our production cannot be scheduled for five thousand with any absolute assurance and therefore we must continue to bill you at the former rate."

No guarantee was received by plaintiff, and shipments and billings continued to be made to Lawson under this order, without Lawson's raising any question or making any objection. Lawson's liability for such shipments was for the jury. However, on November 18, 1932, Pennwood wrote plaintiff as follows:

"In regard to our phone conversation yesterday, we will agree to pay for these accounts in ten days or as soon as they reach $300 until you are satisfied to give us additional credit. However, will you start shipping motors to us at once so that we can fill our orders, as it seems a shame to have all this business during a depression held up for lack of sufficient credit reference."

By letter of November 19th, plaintiff advised Pennwood it would make shipments according to their telephone conversation, and would extend Pennwood credit up to $300.

On November 22, 1932, following plaintiff's letter to Pennwood agreeing to extend that corporation credit to the amount of $300, Pennwood sent a blanket order to plaintiff for 2250 motors to be taken out as required. With that order was accompanied exemption certificate No. 8316 signed by Lawson. The letter further stated that Lawson was in no way responsible for the movements which were being shipped to Pennwood, but that billing should continue to Lawson, which they in turn would turn over to Pennwood until such time as a proper method for taking care of the tax had been worked out. Beginning with invoice dated November 30th, shipments were made aggregating $1,814.65. All these invoices are identified by notation of tax exemp-

tion certificate No. 8316, or by customer's order of November 22, 1932.

This arrangement was with the knowledge of Lawson, and plaintiff continued to forward its invoices to Lawson. On December 3d Lawson wrote plaintiff as follows:

"Kindly refer to your letter of August 24th, in which you acknowledged receipt of our letter of August 23rd, which called for 500 clock movements. These were shipped during August and September and paid for by this company.

"Following that date additional orders have been sent to you by the Pennwood Clock Corporation, but for tax reasons Mr. L. S. Lawson wrote you and requested that until they had a better understanding with reference to these taxes that the invoices for the motors be made out to the Lawson Manufacturing Company, but with the distinct understanding that the obligation was being assumed by the Pennwood Clock Corporation. Your invoices as they have come in have been turned over to the Pennwood Clock Corporation, and in no way are they recorded in our books, nor do we assume any responsibility for their payment.

"Our only reason for writing you this letter is so that your bookkeeping department will understand that they are to look to the Pennwood Clock Corporation for payment notwithstanding that these invoices have been made out in the name of the Lawson Manufacturing Company, and we thought best to have this made a matter of record and we intend this letter for that purpose only."

Lawson received this answer from plaintiff, dated December 5th:

"We have yours of December 3rd and have noted contents carefully.

"The only thing that we are not clear about is in regard to the statements. We realize while we send the invoices to Lawson, we are to look for payment to

Pennwood. We would like to know whether you want us to send our monthly statements to Pennwood or Lawson.

"We are sending the present statement to Lawson but will handle this any way you want us to."

On the same day, the plaintiff sent Pennwood a letter, reading in part as follows:

"We are in receipt of your check for $309.88, for which we wish to thank you. We would like to point out, however, that according to the statement which has gone out to you, you owed us as of December 1st $1,189.32. The present check reduces the amount to $879.44. According to our previous understanding you had agreed that the maximum credit limit you would require would be $300. Hence, we feel that you ought to send us immediately $579.44, representing the difference. Despite the fact that we have allowed you credit in excess of what we had agreed upon, nevertheless we are shipping you 250 sixty-cycle motors today, and will be prepared to ship you 200 to 250 fifty-cycle motors either Tuesday or Wednesday."

Of the shipments aggregating $1,814.65, all but three were subsequent to plaintiff's letter of December 5th to Lawson.

The judgment must be reversed, as the verdict of the jury against Lawson cannot be sustained in the face of plaintiff's extension of credit to Pennwood, on November 19th, for merchandise to be shipped, and its subsequent written admission, on December 5th, of Lawson's non-liability. Lawson was liable for the 500 movements which it contracted to purchase, and for such other merchandise as it may have ordered, or for which it may have permitted itself to assume liability; but clearly it was not liable for the merchandise ordered by Pennwood under a line of credit granted to it by plaintiff after it was advised by plaintiff that Pennwood, and not Lawson, was to pay for such merchandise. This is true although the goods were shipped and

invoiced to Lawson. The jury should have been so instructed. A new trial must therefore be granted in order that the true extent of Lawson's liability may be determined. Any credit for defective materials which were returned must likewise be apportioned between the respective defendants, or the credit given to the one entitled thereto as may be established.

Refusal of defendant's motion for judgment n. o. v. is affirmed, but its motion for a new trial should have been granted.

Judgment is reversed, with a venire.